UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

LIGHTHOUSE BAPTIST CHURCH,
INC., RICHARD HACK, MATT
MAYER, and PAUL GLISSON,

           Plaintiffs,

      v.

CHEMUNG COUNTY, CHEMUNG
COUNTY HEALTH DEPARTMENT,
PETE BUZZETTI, Individually and in his
Official Capacity as Chemung County's
Public Health Director, CHRISTOPHER
MOSS, Individually and in his Official
Capacity as County Executive, and MARI
DELANEY, Individually and in her
Official Capacity as Chairman for the
Chemung County Health Department,

           Defendants.
_____

**DECISION AND ORDER**

6:20-CV-7000 EAW

## <u>INTRODUCTION</u>

Plaintiffs Lighthouse Baptist Church, Inc. ("LBC"), Richard Hack, Matt Mayer, and Paul Glisson (collectively "Plaintiffs") commenced this lawsuit arising from their claim that Defendants Chemung County, Chemung County Health Department, Pete Buzzetti, Christopher Moss, and Mari Delaney (collectively "Defendants") violated Plaintiffs' constitutional rights by limiting LBC's ability to conduct religious services during the COVID-19 pandemic. (Dkt. 1).

Presently before the Court is Defendants' motion for permission to file a late responsive pleading and motion to dismiss (Dkt. 19), Plaintiffs' motion for an extension of time to file their renewed application for attorneys' fees and costs (Dkt. 21), and Plaintiffs' motion to amend their complaint a second time (Dkt. 31).  For the reasons set forth below, Defendants' motion for permission to file a late responsive pleading is granted but their motion to dismiss is denied, Plaintiffs' motion to amend their complaint is granted, and Plaintiffs' motion for an extension of time to file their renewed application for attorneys' fees and costs is granted but the application is denied without prejudice.

## BACKGROUND

Plaintiffs commenced the instant action on November 20, 2020, pursuant to 42 U.S.C. § 1983, seeking declaratory relief and preliminary and final injunctions for alleged violations of their constitutional rights.  (Dkt. 1).  The alleged violations stem from Defendants' attempts to ascertain and manage a suspected COVID-19 outbreak at LBC in September of 2020.  (*See* Dkt. 1 at ¶¶ 14-89; Dkt. 23 at 22-24).

Particularly, Plaintiffs challenge a notice of closure that the Chemung County Health Department posted on LBC's door on September 8, 2020, prohibiting LBC from holding services.  (Dkt. 1 at ¶¶ 21-24; Dkt. 2-2 at 9; Dkt. 23 at ¶¶ 25, 36).[1]  No hearing was

---

[1]     In their memorandum of law, Defendants set forth a number of factual allegations relating to and disputing the allegations in Plaintiffs' complaint.  However, any factual allegations contained in a memorandum of law or exhibits attached thereto but not expressly pled or incorporated into the complaint cannot be considered by the Court on a motion to dismiss for failure to state a claim upon which relief may be granted.  *United States ex rel. Foreman v. AECOM*, 19 F.4th 85, 107 (2d Cir. 2021) ("A district court therefore errs when it consider[s] affidavits and exhibits submitted by defendants, or relies

conducted or evidence presented before LBC was ordered to close.  (Dkt. 23 at ¶¶ 37, 38).

In addition to the closure, Defendants Pete Buzzetti and Christopher Moss published

disparaging statements about LBC, its leadership, and its congregants, despite there being

no evidence to support a conclusion that any COVID cluster originated at LBC or was due

to any actions of Plaintiffs.  (*Id.* at ¶¶ 26, 28, 76, 77).  Defendants demanded that Plaintiffs

provide names and addresses of LBC attendees and threatened that failure to comply and

provide the requested information would result in fines.  (*Id.* at ¶¶ 58, 59).  Despite

Plaintiffs' attempts to comply with Defendants' requests in an effort to reopen, Defendants,

without justification or due process, sought to impose additional requirements beyond

those permitted by law.  (*Id.* at ¶¶ 63, 64).  When LBC would not agree to Defendants'

additional demands, a new notice of closure was posted at LBC in late October 2020,

banning all indoor and outdoor operations.  (*Id.* at ¶¶ 66, 67).  In addition to their complaint,

Plaintiffs filed a motion for a preliminary injunction to enjoin Defendants from enforcing

this closure order.  (Dkt. 2).

On November 24, 2020, the Court ordered an expedited briefing schedule regarding

Plaintiffs' motion for a preliminary injunction and set oral argument for December 10,

2020.  (Dkt. 5).  In light of Plaintiffs' failure to comply with Local Rule 65(a)(4), the Court

denied Plaintiffs' request for an evidentiary hearing.  (*Id.* at 3).

---

on factual allegations contained in legal briefs or memoranda in ruling on a 12(b)(6) motion
to dismiss." (quotation and citation omitted), *cert. denied*, 142 S. Ct. 2679 (2022)).

On December 4, 2020, at the request of the parties, the Court entered the Stipulated Preliminary Injunction, which granted Plaintiffs' motion for a preliminary injunction and enjoined Defendants from imposing any restrictions on Plaintiffs other than those contained in the "Interim Guidance for Religious & Funeral Services During the Covid-19 Public Health Emergency" promulgated by the New York State Department of Health, and required the withdrawal of the letter dated September 24, 2020, from Chemung County Attorney M. Hyder Hussain.  (Dkt. 9).

On February 19, 2021, Plaintiffs filed a motion for attorneys' fees pursuant to 42 U.S.C. § 1988.  (Dkt. 11).  Plaintiffs sought reimbursement of $32,013.50 in attorneys' fees and $863.75 in costs and disbursements, for a total award of $32,877.25, claiming that they are "prevailing parties" pursuant to 42 U.S.C. § 1988.  On September 14, 2021, the Court denied the motion without prejudice on grounds that it was not timely filed but granted permission for Plaintiffs to file a subsequent fee application accompanied by a motion to extend the deadline for doing so.  (Dkt. 17).  In the September 14, 2021 Decision and Order, the Court also noted that Defendants had not yet answered or otherwise responded to Plaintiffs' complaint.  (*Id.* at 7).

On October 20, 2021, Defendants filed the instant motion for an extension of time to respond to Plaintiffs' complaint and contemporaneous motion to dismiss the complaint for lack of jurisdiction and failure to state a claim.  (Dkt. 19).  On November 10, 2021, Plaintiffs filed an amended complaint.  (Dkt. 23).  In addition to the three claims asserted in the initial complaint, *i.e.*, violation of Plaintiffs' First and Fourteenth Amendment right to the Free Exercise of Religion; violation of Plaintiffs' First and Fourteenth Amendment

right to the Freedom of Speech, Assembly, and Expressive Association; and violation of the Fourteenth Amendment Equal Protection Clause; the amended complaint also asserts claims for violation of the Fourteenth Amendment Due Process Clause; violation of Plaintiffs' Fourth and Fourteenth Amendment right to be protected from an unreasonable search and seizure; violation of Plaintiffs' Fourth, Fifth, and Fourteenth Amendment right to be free from malicious abuse of process; violation of Plaintiffs' First, Fourth, Fifth, and Fourteenth Amendment right to be free from conspiracy to deprive constitutional rights; and a claim for deliberate indifference pursuant to *Monell v. Department of Social Services*, 436 U.S. 658 (1978) against the County of Chemung.  (*Id.*).  While the initial complaint only sought injunctive relief, declaratory relief, and attorneys' fees, in the amended complaint Plaintiffs also seek compensatory, nominal, and punitive damages.  (*Id.* at 32). Defendants requested (Dkt. 24) and were granted permission (Dkt. 26) to transfer their pending motion to dismiss to Plaintiffs' amended complaint on the basis of their argument that the amended complaint did not remedy any of the deficiencies identified in the pending motion to dismiss.  On December 13, 2021, Plaintiffs filed their opposition to the motion to dismiss.  (Dkt. 30).

On October 29, 2021, Plaintiffs filed their motion for an extension of time to file their renewed application for attorneys' fees and costs.  (Dkt. 21).  In their application, they seek $48,523.00 in fees and $2,043.10 in expenses, for a total award of $50,566.10.  On November 19, 2021, Defendants filed their opposition to the motion (Dkt. 25), and on November 29, 2021, Plaintiffs filed their reply (Dkt. 27).

On August 1, 2022, Plaintiffs filed a motion to again amend their amended complaint. (Dkt. 31). Specifically, they now move for leave to assert state law claims for defamation, defamation per se, libel, libel per se, intentional infliction of emotional distress, and negligent infliction of emotional distress, and to add additional congregants of LBC as Plaintiffs. (Dkt. 31-3). On August 23, 2022, Defendants filed their opposition to the motion (Dkt. 33), and on August 30, 2022, Plaintiffs filed their reply (Dkt. 34).

## DISCUSSION

## I. DEFENDANTS' MOTION FOR EXTENSION OF TIME TO FILE RESPONSIVE PLEADING AND MOTION TO DISMISS

### A. Legal Standards

#### 1. Rule 12(b)(6)

"In considering a motion to dismiss for failure to state a claim pursuant to Rule 12(b)(6), a district court may consider the facts alleged in the [pleading], documents attached to the [pleading] as exhibits, and documents incorporated by reference in the [pleading]." *DiFolco v. MSNBC Cable L.L.C.*, 622 F.3d 104, 111 (2d Cir. 2010). A court should consider the motion by "accepting all factual allegations as true and drawing all reasonable inferences in favor of the [claimant]." *Trs. of Upstate N.Y. Eng'rs Pension Fund v. Ivy Asset Mgmt.*, 843 F.3d 561, 566 (2d Cir. 2016). To withstand dismissal, a claimant must set forth "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the [claimant] pleads factual content that allows the court to draw the reasonable

inference that the defendant is liable for the misconduct alleged." *Turkmen v. Ashcroft*, 589 F.3d 542, 546 (2d Cir. 2009) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).

"While a [pleading] attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a [claimant]'s obligation to provide the grounds of his entitle[ment] to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555 (internal quotations and citations omitted). "To state a plausible claim, the [pleading]'s '[f]actual allegations must be enough to raise a right to relief above the speculative level.'" *Nielsen v. AECOM Tech. Corp.*, 762 F.3d 214, 218 (2d Cir. 2014) (quoting *Twombly*, 550 U.S. at 555).

2.    **Rule 12(b)(1)**[2]

Federal courts are courts of limited jurisdiction and possess only that power authorized by Article III of the United States Constitution and statutes enacted by Congress pursuant thereto. *Bender v. Williamsport Area Sch. Dist.*, 475 U.S. 534, 541 (1986). "Subject matter jurisdiction is a threshold question that must be resolved before proceeding to the merits." *United States v. Bond*, 762 F.3d 255, 263 (2d Cir. 2014) (quotation and

---

[2] Although Defendants purport to move to dismiss for lack of subject matter jurisdiction pursuant to both Rule 12(b)(1) and Rule 12(b)(2) (*see* Dkt. 19-2 at 16-17), Rule 12(b)(2) relates to a lack of personal jurisdiction, *see* Fed. R. Civ. P. 12(b)(2). Defendants cite three cases that ostensibly stand for the proposition that Rule 12(b)(2) also governs motions challenging mootness, but each case applies Rule 12(b)(1) and not Rule 12(b)(2) to a mootness analysis. *See Valentin v. Hosp. Bella Vista*, 254 F. 3d 358, 362-63 (1st Cir. 2001); *Ernst & Young v. Depositors Econ. Prot. Corp.*, 45 F. 3d 530, 534 (1st Cir. 1995); *In re Gonzalez Maldonado*, 610 B.R. 49, 54 (Bankr. D.P.R. 2019). There being no apparent basis to proceed pursuant to Rule 12(b)(2) on the instant motion, the Court will not address this Rule.

alteration omitted).   "A district court properly dismisses an action under Fed. R. Civ. P. 12(b)(1) for lack of subject matter jurisdiction if the court lacks the statutory or constitutional power to adjudicate it . . ."   *Cortlandt St. Recovery Corp. v. Hellas Telecomms., S.á.r.l,* 790 F.3d 411, 416-17 (2d Cir. 2015) (quotation and citation omitted). "A plaintiff asserting subject matter jurisdiction has the burden of proving by a preponderance of the evidence that it exists." *Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000).   "When considering a motion to dismiss for lack of subject matter jurisdiction . . . a court must accept as true all material factual allegations in the complaint." *Shipping Fin. Servs. Corp. v. Drakos*, 140 F.3d 129, 131 (2d Cir. 1998); *see also Tandon v. Captain's Cove Marina of Bridgeport, Inc.,* 752 F.3d 239, 243 (2d Cir. 2014) ("In resolving a motion to dismiss under Rule 12(b)(1), the district court must take all uncontroverted facts in the complaint . . . as true, and draw all reasonable inferences in favor of the party asserting jurisdiction."). *Cf. Carter v. HealthPort Techs., LLC*, 822 F.3d 47, 57 (2d Cir. 2016) (when a Rule 12(b)(1) motion is fact-based, evidence beyond the pleadings may be considered); *Next Generation Tech., Inc. v. Jaddou*, No. 21CV1390PGGRWL, 2022 WL 1548037, at *4 (S.D.N.Y. May 12, 2022) ("[T]he Court "may consider affidavits and other materials beyond the pleadings to resolve the jurisdictional issue . . . .").

In the instance where a plaintiff amends his complaint while a motion to dismiss is pending, "the district court has the option of either denying the pending motion as moot or evaluating the motion in light of the facts alleged in the amended complaint." *Pettaway v. Nat'l Recovery Sols*., *LLC*, 955 F.3d 299, 303-04 (2d Cir. 2020); *Leo v. New York St. Dep't*

- 8 -

*of Envir. Conserv.*, No. 20-CV-7039-FPG, 2022 WL 138538, at *4 (W.D.N.Y. Jan. 14, 2022) ("Here, the Court elects to consider the merits of the motion to dismiss in light of the proposed amended complaint.  Because it concludes that neither the original complaint nor the [First Amended Complaint] could withstand a motion to dismiss, the Court grants the motions to dismiss and denies leave to file the [First Amended Complaint]."); *Willis v. Rochester Police Dep't*, No. 15-CV-6284-FPG, 2018 WL 4637378, at *2 (W.D.N.Y. Sept. 27, 2018) ("When—as in this case—a motion to amend is filed in response to a pending motion to dismiss, 'a court has a variety of ways in which' to proceed, 'from denying the motion [to dismiss] as moot to considering the merits of the motion [to dismiss] in light of the [proposed] amended complaint.'" (quoting *Conforti v. Sunbelt Rentals, Inc.*, 201 F. Supp. 3d 278, 291 (E.D.N.Y. 2016)).  Here, as noted, the Court has agreed to consider the merits of Defendants' motion to dismiss with respect to Plaintiffs' amended complaint.

## B.    Defendants' Motion to Dismiss

### 1.    Extension of Time

As a threshold matter, Defendants move to extend the time to respond to Plaintiffs' complaint and request the Court to consider their untimely motion to dismiss.  Because Plaintiffs do not oppose the portion of Defendants' motion seeking an extension of time to file a late response to Plaintiffs' complaint and in the interest of justice, the Court grants this portion of Defendants' motion and will consider the motion to dismiss on its merits. *SB on behalf of AB v. Newark Cent. Sch. Dist.*, No. 6:21-CV-06138 EAW, 2022 WL 541773, at *3 n.2 (W.D.N.Y. Feb. 23, 2022) ("Because Plaintiffs . . . do not oppose this request for relief, the Court need not address whether excusable neglect has been

demonstrated and allows the late filing of Moving Defendants' answer." (citation omitted)).

### 2.    Mootness

Defendants first argue that Plaintiffs' amended complaint is subject to dismissal pursuant to the mootness doctrine.

"The mootness doctrine is rooted in the 'case or controversy' requirement of Article III of the Constitution, which describes 'the principle that, at all times, the dispute before the court must be real and live, not feigned, academic, or conjectural.'" *Patskin v. Bd. of Educ. of Webster Cent. Sch. Dist.*, 583 F. Supp. 2d 422, 428 (W.D.N.Y. 2008) (quoting U.S. Const. art. III, § 2, cl. 1; *Russman v. Bd. of Educ. of Enlarged City Sch. Dist. of City of Watervliet*, 260 F.3d 114, 118 (2d Cir. 2001)). "A case is moot, and accordingly the federal courts have no jurisdiction over the litigation, when 'the parties lack a legally cognizable interest in the outcome.'" *Fox v. Bd. of Trs. of State Univ. of N.Y.*, 42 F.3d 135, 140 (2d Cir. 1994) (quoting *County of Los Angeles v. Davis*, 440 U.S. 625, 631 (1979)); *Doyle v. Midland Credit Mgmt., Inc.*, 722 F.3d 78, 80 (2d Cir. 2013) ("[W]hen a case becomes moot, the federal courts lack subject matter jurisdiction over the action."). "Thus, 'under the mootness doctrine, if an event occurs . . . that makes it impossible for the court to grant any effectual relief whatever to a prevailing party, [the court] must dismiss the case, rather than issue an advisory opinion.'" *Farez-Espinoza v. Napolitano*, No. 08 CIV. 11060(HB), 2009 WL 1118098, at *4 (S.D.N.Y. Apr. 27, 2009) (quoting *ABC, Inc. v. Stewart*, 360 F.3d 90, 97 (2d Cir. 2004)).

Defendants argue that this action is moot because the last closure order for LBC was rescinded in December of 2020 and the Stipulated Preliminary Injunction resolved all matters between the parties.  In addition, Defendants argue that the "voluntary cessation" doctrine is applicable here.  As the name of the doctrine implies, "voluntary cessation" is only applicable to situations where the party that committed the alleged violation alters the behavior prior to a decision by a court addressing the issue, thereby arguably mooting the case.  *Am. Freedom Def. Initiative v. Metro. Transp. Auth.*, 815 F.3d 105, 109 (2d Cir. 2016) ("[C]ourts will find a case moot after a defendant voluntarily discontinues challenged conduct only if (1) it can be said with assurance that there is no reasonable expectation that the alleged violation will recur and (2) interim relief or events have completely and irrevocably eradicated the effects of the alleged violation." (quotations omitted)); *see also Burke v. Barnes*, 479 U.S. 361, 363-64 (1987) (holding that, when a challenged statute "by its own terms [becomes] a dead letter," the case becomes moot); *Litowitz v. Garland*, No. 3:20-CV-724(AWT), 2021 WL 3679144, at *4 (D. Conn. Aug. 19, 2021) ("[The] mootness doctrine counsels suspicion in situations in which a defendant deprives a plaintiff of her stake in the litigation.  For instance, when a plaintiff seeks an injunction, a defendant who voluntarily ceases the challenged behavior calls into question whether there is any way to redress the injury alleged." (quoting *Klein on behalf of Qlik Techs., Inc. v. Qlik Techs., Inc.*, 906 F.3d 215, 224 (2d Cir. 2018)).

Plaintiffs challenge whether Defendants can satisfy their burden of showing that the voluntary cessation doctrine is applicable, arguing that it is far from clear that there is no expectation that the allegedly wrongful behavior could reasonably reoccur, particularly as

the COVID-19 pandemic continues and executive orders continue to be implemented.  In addition, here, it was the entry of the Stipulated Preliminary Injunction that ceased the conduct and not solely a voluntarily discontinuance by Defendants.  *See Lallave v. Martinez*, No. 22CV791(NGG)(RLM), 2022 WL 2338896, at *7 (E.D.N.Y. June 29, 2022) ("[W]hen a court or agency compelled the ceased behavior as opposed to defendants ceasing of their own volition, courts have found this exception inapplicable.").

But beyond these arguments and more fundamentally, Plaintiffs' amended complaint seeks more than injunctive or declaratory relief and also seeks compensatory, nominal, and punitive damages for the alleged violations.  Under these circumstances, a request for damages precludes dismissal of the complaint on mootness grounds.  *See Davis v. Vill. Park II Realty Co.*, 578 F.2d 461, 463 (2d Cir. 1978) ("The availability of either nominal or substantial damages is sufficient to prevent this case from becoming moot."); *Nat'l Coal. on Black Civic Participation v. Wohl*, 512 F. Supp. 3d 500, 517 (S.D.N.Y. 2021) ("Furthermore, even if the Defendants could adequately persuade the Court that the robocalls would not recur, [a]s long as the parties have a concrete interest, however small, in the outcome of the litigation, the case is not moot.  Because Plaintiffs bring causes of action for both injunctive relief and monetary damages, as long as Plaintiffs can properly recover monetary damages, this action is not moot." (citations omitted)); *62-64 Kenyon St. Hartford, LLC v. City of Hartford*, No. 3:16-CV-00617(VAB), 2017 WL 20911, at *5 (D. Conn. Jan. 2, 2017) ("Following *Davis*, a request for even nominal damages or attorneys' fees will ensure the survival of a plaintiff's claim, even when the defendant has ceased the offending action."); *Marin v. Town of Se.*, 136 F. Supp. 3d 548, 562 (S.D.N.Y. 2015) ("[S]o

long as the plaintiff has a cause of action for damages, a defendant's change in conduct will not moot the case."); *Orozco by Arroyo v. Sobol*, 703 F. Supp. 1113, 1117 (S.D.N.Y. 1989) ("Plaintiff correctly notes that a claim for damages remains viable even though claims for injunctive or declaratory relief are deemed moot." (citing *Powell v. McCormack*, 395 U.S. 486, 496 (1969))); *see also Uzuegbunam v. Preczewski*, __ U.S. __, 141 S. Ct. 792, 797, 802 (2021) (holding that where a plaintiff "sues over a completed injury and establishes the first two elements of standing (injury and traceability)," that "plaintiff can establish the third element of standing – redressability – with a request for nominal damages").

As noted, Defendants' motion to dismiss was filed prior to Plaintiffs amending their complaint to assert claims for damages and Defendants have not updated their submissions on the instant motion to address the impact the damages claims have on their mootness argument. There being no apparent basis advanced by Defendants to justify dismissal on mootness grounds in light of the damages requests asserted in Plaintiffs' amended complaint, Defendants' motion to dismiss Plaintiffs' amended complaint on mootness grounds is denied.

### 3. Qualified Immunity

Alternatively, Defendants argue that all of the claims asserted by Plaintiffs are barred by the qualified immunity provisions in the New York Emergency or Disaster Treatment Protection Act ("EDTPA"), Public Health Law Article 30, §§ 3080-3082. The EDTPA, now repealed, contained three prongs, all of which are required to be met to afford immunity:

(a) the health care facility or health care professional is arranging for or providing health care services pursuant to a COVID-19 emergency rule or otherwise in accordance with applicable law;

(b) the act or omission occurs in the course of arranging for or providing health care services and the treatment of the individual is impacted by the health care facility's or health care professional's decisions or activities in response to or as a result of the COVID-19 outbreak and in support of the state's directives; and

(c) the health care facility or health care professional is arranging for or providing health care services in good faith (Public Health Law § 3082, as enacted L 2020, ch. 56, § 1 (Part GGG)).

*Spearance v. Snyder*, 73 Misc. 3d 769, 774 (Sup. Ct. 2021).

Here, Defendants have provided no authority for the notion that any Defendant in this case would qualify as a "health care facility" or "health care professional," or that their conduct at issue would constitute "health care services" and treatment of individuals with COVID-19, as set forth in the statute.[3]  Nor it is clear that the harm the statute is intended

---

[3]  The term "health care facility" "is broadly defined as 'a hospital, nursing home, or other facility licensed or authorized to provide health care services for any individual under Article 28 of this chapter, Article 16 and Article 31 of the Mental Hygiene Law or under a COVID-19 emergency rule." *Crampton v. Garnet Health*, 73 Misc. 3d 543, 549 n.1 (Sup. Ct. 2021) (quoting Pub. Health Law § 3081(3)).  The term "health care professional" is defined as any individual who is: "(a) licensed or otherwise authorized under title eight, article one hundred thirty-one, one hundred thirty-one-B, one hundred thirty-one-C, one hundred thirty-seven, one hundred thirty-nine, one hundred forty, one hundred fifty-three, one hundred fifty-four, one hundred sixty-three, one hundred sixty-four or one hundred sixty-five of the education law; (b) a nursing attendant or certified nurse aide, including an individual who is providing care as part of an approved nursing attendant or certified nurse aide training program; (c) licensed or certified under article thirty of this chapter to provide emergency medical services; (d) a home care services worker as defined in section thirty-six hundred thirteen of this chapter; (e) providing health care services within the scope of authority permitted by a COVID-19 emergency rule; or (f) a health care facility administrator, executive, supervisor, board member, trustee or other person responsible for directing, supervising or managing a health care facility and its personnel or other individual in a comparable role."  Pub. Health Law § 3081(4).

to protect would cover the alleged harm alleged here.[4]   Indeed, the "Declaration of Purpose" for the statute indicates that the intention of the EDTPA is "to promote the public health, safety and welfare of all citizens by broadly protecting the health care facilities and health care professionals in this state from liability that may result from treatment of individuals with COVID-19 under conditions resulting from circumstances associated with the public health emergency."  N.Y. Pub. Health Law § 3080; *Crampton v. Garnet Health*, 73 Misc. 3d 543, 547 (N.Y. Sup. Ct. 2021).

Because the EDTPA "confers immunity from liability, . . it therefore must be strictly construed."  *Spearance*, 73 Misc. 3d at 772 (quoting *Brown v. Bowery Sav. Bank*, 51 N.Y.2d 411, 415 (1980)).  Defendants' argument that the EDTPA's language should be broadly read to protect governmental entities and officials for liability arising from any alleged constitutional violations is unsupported and cannot serve as a basis to warrant dismissal of Plaintiffs' complaint.  This portion of Defendants' motion to dismiss is denied.

## II.   PLAINTIFFS' MOTION TO AMEND

### A.   Legal Standard

"A district court has broad discretion in determining whether to grant leave to amend[.]"  *Gurary v. Winehouse*, 235 F.3d 792, 801 (2d Cir. 2000), *abrogated on other grounds by F.T.C. v. Actavis, Inc.*, 570 U.S. 136 (2013).  "The court should freely give leave when justice so requires."  Fed. R. Civ. P. 15(a)(2).  "Reasons for denying leave to

---

[4]      "The term 'harm' is broadly defined as 'includ[ing] physical and nonphysical contact that results in injury to or death of an individual.'"  *Crampton*, 73 Misc. 3d 543 at 561 n. 2 (quoting Public Health Law § 3081(1), (2)).

amend include 'undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, [or] futility of amendment.'" *Rose v. United Prop. and Cas. Ins. Co.*, No. 3:21-CV-01217 (VAB), 2022 WL 4115635, at *3 (D. Conn. Sept. 9, 2022) (quoting *Foman v. Davis*, 371 U.S. 178, 182 (1962)). It is not an abuse of discretion for a court to deny leave to amend where allowing an amendment is "unlikely to be productive." *Ruffolo v. Oppenheimer & Co.*, 987 F.2d 129, 131 (2d Cir. 1993). In addition, as noted, "[o]ne appropriate basis for denying leave to amend is that the proposed amendment is futile," and a proposed amendment "is futile if the proposed claim could not withstand a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6)." *Lucente v. Int'l Bus. Machines Corp.*, 310 F.3d 243, 258 (2d Cir. 2002).

## B.    Plaintiffs' Proposed Second Amended Complaint

Here, Plaintiffs move for leave to file their second amended complaint to assert state law claims for defamation, defamation per se, libel, libel per se, intentional infliction of emotional distress, and negligent infliction of emotional distress, and to add additional congregants of LBC as Plaintiffs. (Dkt. 31-3). Plaintiffs contend that these claims have been contemplated since the outset of the litigation and arise from the same set of facts as the pending claims, but Plaintiffs were unable to include these claims prior to satisfying New York's notice of claim requirements, which they have now completed.

It is undisputed that "state notice-of-claim statutes apply to state-law claims asserted as pendant claims in a federal action." *Singletary v. Allen*, 431 F. Supp. 3d 126, 129 (W.D.N.Y. 2019) (quotation omitted). "Under New York law, a notice of claim is a

mandatory precondition to bringing a tort claim against a municipality or any of its officers, agents or employees." *Grant v. City of Syracuse*, No. 5:15-cv-445, 2017 WL 5564605, at *10 (N.D.N.Y. Nov. 17, 2017) (internal quotation marks and citation omitted); *Washington v. City of New York*, 190 A.D.3d 1009, 1010 (2d Dep't 2021) ("To enable authorities to investigate, collect evidence and evaluate the merit of a claim, persons seeking to recover in tort against a municipality are required, as a precondition to suit, to serve a Notice of Claim." (citations omitted)).  "Notice of claim requirements are construed strictly by New York state courts.  Failure to comply with these requirements ordinarily requires a dismissal for failure to state a cause of action." *Hardy v. N.Y.C. Health & Hosp. Corp.*, 164 F.3d 789, 793-94 (2d Cir. 1999) (citation omitted).

Plaintiffs contend that because they were required to obtain permission to file a late notice of claim before amending their complaint to add these claims to this lawsuit, any delay was justified.  But Defendants argue that Plaintiffs unduly delayed in seeking amendment because they received permission to file a late notice of claim in December of 2021 but did not file the instant motion until August of 2022.  While the Court agrees that the motion to amend could seemingly have been filed earlier, as described above, this case is in many respects still in the early stages of litigation as evidenced by the fact that Defendants are only now asserting an initial response to Plaintiffs' complaint.  Indeed, the diligence exercised in this litigation by all parties appears lacking.  The Court concludes that delay alone does not serve as a basis to justify denial of Plaintiffs' motion to amend. In addition, Defendants have not demonstrated that they would suffer meaningful prejudice

if leave to amend is granted.  Given the procedural posture of this case, allowing amendment would not significantly delay final disposition of this matter.

Defendants also argue that the state law claims Plaintiffs seek to assert are futile. One basis for this argument is Defendants' contention that all controversies between the parties are moot, but as discussed above, this argument has been rejected by the Court and does not serve as a basis to deny the motion to amend.

Defendants further contend that the amendment is futile because Defendant Christopher Moss, as County Executive, and Pete Buzzetti, as Public Health Director at the Chemung County Health Department, each enjoy absolute or qualified privilege precluding the assertion of claims against them arising from any statements they made.  Specifically, Defendants contend that both Defendant Moss and Defendant Buzzetti are entitled to an absolute privilege afforded to principal executives of local governments who are entrusted with executive policy-making.  The absolute privilege in question provides complete immunity from liability with respect to statements made within the discharge of those duties.  *Daytree at Cortland Square, Inc. v. Walsh*, No. 21-1991, 2022 WL 2345820, at *2 (2d Cir. June 29, 2022) ("'[A]n official [who] is . . . entrusted by law with administrative or executive policy-making responsibilities of considerable dimension' is absolutely immune from defamation liability for 'statements made during the discharge of those responsibilities about matters which come within the ambit of those duties.'" (quoting *Clark v. McGee*, 49 N.Y.2d 613, 617 (1980)).  To be sure, certain statements alleged in the second amended complaint may well be cloaked with an absolute privilege to shield Defendants from liability.  But the second amended complaint alleges the existence of a

multitude of challenged statements, many of which could be considered to fall outside of matters of County policy and were not posted on the Chemung County Health Department's official site, but instead, were stated to local media or posted on social media in a manner that disparaged Plaintiffs. *Krusen v. Moss*, 174 A.D.3d 1180, 1181 (3d Dep't 2019) (holding that defendant could not rely on absolute immunity for statements "posted on defendant's campaign Facebook page and another Internet website"). Thus, accepting as true the allegations in the amended complaint, at this stage of the proceedings, absolute immunity does not serve as a basis to deny Plaintiffs' motion to amend and preclude the assertion of the state law claims in their entirety as urged by Defendants.

Alternatively, Defendants argue that even if not protected by absolute immunity, Defendants are entitled to a qualified immunity for the statements attributed to them, warranting denial of the motion to amend. "The doctrine of qualified immunity shields individuals who, . . . act 'in the discharge of some public or private duty, legal or moral, or in the conduct of [her] own affairs, in a matter where h[er] interest is concerned.'" *Sagaille v. Carrega*, 194 A.D.3d 92, 95 (1st Dep't 2021) (quoting *Rosenberg v. MetLife, Inc.*, 8 N.Y.3d 359, 365 (2007)), *leave to appeal denied*, 37 N.Y.3d 909, 174 N.E.3d 710 (2021). In order to overcome the qualified privilege, a plaintiff must sufficiently allege that the statements were published "with actual malice, *i.e.*, that defendant 'acted out of personal spite or ill will, with reckless disregard for the statement's truth or falsity, or with a high degree belief that [her] statements were probably false.'" *Id.* at 95 (quoting *Sborgi v. Green*, 281 A.D.2d 230, 230 (1st Dep't 2001)); *Feldschuh v. State*, 240 A.D.2d 914, 915 (3d Dep't 1997) ("[W]here a defendant has a duty to impart certain information to another

person, the communication is qualifiedly privileged provided the communicator has a good-faith belief that the information is true."); *Jaliman v. Selendy*, 7 Misc. 3d 1007(A), 2005 WL 818447, at *7 (Sup. Ct. 2005) ("A qualified privilege, where applicable, can be pierced by a plaintiff's showing of actual malice.").[5]

A showing of actual malice can be made through allegations that the statements "were made with a high degree of awareness of their probable falsity" or "that malice was the one and only cause for the publication." *Feldschuh*, 240 A.D.2d at 916; *Kipper v. NYP Holdings Co.*, 12 N.Y.3d 348, 353 (2009) (defining actual malice as "knowledge that [the statement] was false or with reckless disregard of whether it was false or not"); *Sweeney v. Prisoners' Legal Servs. of New York, Inc.*, 84 N.Y.2d 786, 792 (1995) ("Actual malice means that defendants published the false information about plaintiff with knowledge that it was false or with reckless disregard of whether it was false or not." (citation and quotation omitted)). In general, "the issue of actual malice is more appropriately weighed at a later stage of the proceedings" than at the motion to dismiss stage. *Fairstein v. Netflix, Inc.*, 553 F. Supp. 3d 48, 57 (S.D.N.Y. 2021).

Here, Plaintiffs' proposed second amended complaint alleges that Defendants made multiple statements suggesting that Plaintiffs were engaging in deliberately reckless behavior that was putting the health of its congregants and community at risk (*see e.g.*, Dkt.

---

[5]     Defendants also argue that Plaintiffs could be considered "public figures" wherein anything said about them is subject to qualified privilege unless motivated by actual malice. *See Crime Victims Ctr., Inc. v. Logue*, 181 A.D.3d 556, 557 (2d Dep't 2020). Because the Court concludes that Plaintiffs' allegations in the second amended complaint satisfy a showing of actual malice for purposes of a futility assessment, it need not resolve whether Plaintiffs can be considered public figures at this time.

31-2 at ¶¶ 56, 59, 109, 120, 152), and that the statements were made with actual malice stemming from Defendants' distaste for Plaintiffs' pushback on Defendants' unlawful demands (*id.* at ¶¶ 173, 309, 317, 323).  Plaintiffs contend that the statements were made with a disregard for the truth in a manner that warrants discovery to explore Defendants' knowledge and motivation in making the statements.  The Court agrees that Plaintiffs have plausibly alleged the existence of actual malice sufficient to overcome Defendants' arguments on the basis of futility.  *See Gong v. Savage*, 75 Misc. 3d 1217(A), 2022 WL 2299070, at *2-3 (Sup. Ct. 2022) ("The questions of (i) whether a qualified privilege shields the statements at issue, and (ii) whether defendant has overcome the privilege, are necessarily fact-specific, such that the court cannot conclusively determine at this stage that the privilege defeats these two defamation counterclaims."); *Krusen*, 174 A.D.3d at 1182 ("The complaint alleged that defendant published the false statements and that they 'were made in bad faith, with reckless disregard for the truth' and 'tend[ed] to subject plaintiff to public contempt, ridicule, aversion, and disgrace.'  In view of these allegations, as well as the specific statements at issue, we are satisfied that plaintiff sufficiently pleaded malice."); *see also Jaliman*, 2005 WL 818447, at *7 ("Actual malice turns upon the speaker's state of mind, which is often not amenable to Summary Judgment . . . and which instead is a jury question." (citations omitted)).

Finally, Defendants argue that Plaintiffs' claims are futile because Plaintiffs have not appropriately pled damages or that any damages suffered by Plaintiffs in the relevant time period cannot fairly be attributed to Defendants.  To the extent that any of Plaintiffs' claims require the pleading of special damage requiring the loss of something having

economic or pecuniary value, the Court concludes that such damages have been adequately alleged or even if lacking, do not warrant wholesale denial of the proposed amendment. Further, any question as to entitlement to damages is more appropriately resolved at a later stage of the proceedings and the Court declines to consider Defendants' speculation as to alternative bases for any losses suffered by Plaintiffs at this time.

For all of these reasons and in light of the standard requiring that leave to amend should be freely permitted, Plaintiffs' motion to amend is granted.

## III. PLAINTIFFS' MOTION FOR AN EXTENSION OF TIME TO FILE APPLICATION FOR ATTORNEYS' FEES

### A. Standard for Awarding Attorneys' Fees Under § 1988

Where, as here, an action is brought pursuant to 42 U.S.C. § 1983, "the court, in its discretion, may allow the prevailing party . . . a reasonable attorney's fee as part of the costs," subject to certain exceptions not relevant here.  42 U.S.C. § 1988(b).  "[P]laintiffs may be considered 'prevailing parties' for attorney's fees purposes if they succeed on any significant issue in litigation which achieves some of the benefit the parties sought in bringing suit."  *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983).  "However, while prevailing parties are eligible for fees under § 1988, they are not invariably entitled to them[,]" and "it is not the technical fact of prevailing party status, but the 'degree of success obtained' that determines a party's entitlement to a fee award and, relatedly, the reasonableness of the amount of that award."  *Husain v. Springer*, 579 F. App'x 3, 4 (2d Cir. 2014) (quoting *Farrar v. Hobby*, 506 U.S. 103, 114 (1992)).

- 22 -

**B.      Timeliness Pursuant to Rule 54**

Rule 54(d)(2)(B)(i) requires that a motion for attorneys' fees "be filed no later than 14 days after the entry of judgment[.]"  *See* Fed. R. Civ. P. 54(d)(2)(B)(i).  The Court entered the Stipulated Preliminary Injunction on December 4, 2020, and Plaintiffs initially filed their motion on February 19, 2021.  In its September 14, 2021 Decision and Order, the Court relied on *Spirit Lake Tribe v. Jaeger*, 5 F.4th 849, 853 (8th Cir. 2021), decided after Plaintiffs filed their motion, to conclude that Plaintiffs' motion was untimely pursuant to Rule 54 and that the entry of the preliminary injunction on December 4, 2020 triggered the 14-day deadline.  (Dkt. 17).

Pursuant to Federal Rule of Civil Procedure 6, the Court may grant a retroactive extension of time on motion where "the party failed to act because of excusable neglect." Fed. R. Civ. P. 6(b)(1)(B); *Tancredi v. Metro. Life Ins. Co.*, 378 F.3d 220, 226 (2d Cir. 2004) ("[W]e hold that absent a statute or order of the court such as a local rule, the district court was required to find 'excusable neglect' under Rule 6(b)(2) to extend the time to move for attorneys' fees after the expiration of Rule 54's fourteen-day deadline."); *Luedeke v. Village of New Paltz*, 194 F.R.D. 64, 65 (N.D.N.Y 2000), *aff'd sub nom. Luedeke v. Murray*, 4 F. App'x 71 (2d. Cir 2001).  "Excusable neglect under Rule 6(b) is a somewhat elastic concept and is not limited strictly to omissions caused by circumstances beyond the control of movant," but may also "encompass delays caused by inadvertence, mistake, or carelessness, at least when the delay was not long, there is no bad faith, there is no prejudice to the opposing party, and movant's excuse has some merit."  *LoSacco v. City of Middletown*, 71 F.3d 88, 93 (2d Cir. 1995) (alteration, citation, and quotations omitted).  In

construing the term "excusable neglect," the Court examines: "[1] [t]he danger of prejudice to the [opposing party], [2] the length of the delay and its potential impact on judicial proceedings, [3] the reason for the delay, including whether it was in the reasonable control of the movant, and [4] whether the movant acted in good faith." *Tancredi*, 378 F.3d at 228 (alterations in original) (citing *Pioneer Inv. Servs. Co. v. Brunswick Assocs. Ltd. P'ship*, 507 U.S. 380, 395 (1993)). "However, 'the equities will rarely if ever favor a party who fails to follow the clear dictates of a court rule and . . . where the rule is entirely clear, we continue to expect that a party claiming excusable neglect will, in the ordinary course, lose under the *Pioneer* test.'" *United States v. $3,585.00 United States Currency*, No. 1:18-CV-00581 EAW, 2019 WL 422660, at *5 (W.D.N.Y. Feb. 4, 2019) (quoting *Silivanch v. Celebrity Cruises, Inc.*, 333 F.3d 355, 366-67 (2d Cir. 2003)).

Here, a consideration of the requisite factors establishes a showing of excusable neglect. First, there is no apparent danger of prejudice to Defendants should the Court consider the motion for fees because Defendants were on notice of Plaintiffs' intention to seek fees from the outset. Second, the two-month delay between the entry of the injunction and filing of the fee application was not substantial. Consideration of the motion would have only a minimal impact on the proceedings in this case, which as explained above, have not proceeded expeditiously. Third, the reason for the delay is persuasive. As the Court acknowledged in its September 14, 2021 Decision and Order, the law in this circuit did not provide a clear directive to Plaintiffs that a preliminary injunction constituted a judgment that would trigger the 14-day filing deadline. It was reasonable for counsel to conclude that the motion was timely filed at the time it was made. Finally, as to the last

factor, there is no evidence that any delay in filing the motion was due to bad faith on the part of Plaintiffs.

For all of these reasons, the Court concludes that Plaintiffs have made the necessary showing of excusable neglect to warrant consideration of their interim fee application on the merits. The Court now turns to Plaintiffs' application for fees.

### C.      Award of Attorneys' Fees and Costs

"Determining whether an award of attorney's fees is appropriate requires a two-step inquiry. First, the party must be a 'prevailing party' in order to recover. If [the party] is, then the requested fee must also be reasonable." *Congregation Rabbinical Coll. of Tartikov, Inc. v. Vill. of Pomona*, No. 07-CV-6304 (KMK), 2021 WL 1222159, at *5-6 (S.D.N.Y. Mar. 31, 2021) (quoting *Pino v. Locascio*, 101 F.3d 235, 237 (2d Cir. 1996)). Defendants argue that Plaintiffs should not be considered a prevailing party and alternatively, to the extent the Court finds an award of fees warranted, the amount sought by Plaintiffs should be reduced and subject to supplemental briefing. (Dkt. 25-1 at 15). The Court agrees that resolution of this issue requires further submissions by both parties.

Specifically, the parties are directed to address in a more comprehensive manner whether Plaintiffs can be considered a "prevailing party." Second Circuit precedent provides that in certain circumstances, a party may be entitled to an award of attorneys' fees under 42 U.S.C. § 1988 where the party obtains a preliminary injunction. *Haley v. Pataki*, 106 F.3d 478, 483 (2d Cir. 1997) ("When a party receives a stay or preliminary injunction but never obtains a final judgment, attorneys' fees are proper if the court's action in granting the preliminary injunction is governed by its assessment of the merits."). But

- 25 -

in *Sole v. Wyner*, the Supreme Court made clear that "[p]revailing party status . . . does not attend achievement of a preliminary injunction that is reversed, dissolved, or otherwise undone by the final decision in the same case." 551 U.S. at 83, 85 (2007) ("We express no view on whether, in the absence of a final decision on the merits of a claim for permanent injunctive relief, success in gaining a preliminary injunction may sometimes warrant an award of counsel fees. We decide only that a plaintiff who gains a preliminary injunction does not qualify for an award of counsel fees under § 1988(b) if the merits of the case are ultimately decided against her."); *see also R.G. ex rel. M.G. v. Minisink Valley Cent. Sch. Dist.*, 531 F. App'x 76, 79-80 (2d Cir. 2013) (concluding that award of preliminary injunction did not render plaintiff a prevailing party because the transcript of proceedings showed the preliminary injunction was issued merely to forestall irreparable harm pending consideration of the merits, was "hasty and abbreviated," and was not a full "assessment of the merits"); *Dardashtian*, No. 17CV4327(LLS)(RWL), 2021 WL 746133, at *27 (S.D.N.Y. Feb. 16, 2021) ("Nevertheless, a determination of the extent to which Plaintiffs should be granted attorney's fees is premature as the instant motion is only for partial summary judgment. To what extent attorney's fees should be awarded should await a comprehensive judgment."), *report and recommendation adopted,* No. 17 CIV. 4327 (LLS), 2021 WL 1191811 (S.D.N.Y. Mar. 30, 2021); *cf. Gonzalez v. Town of Stratford*, 830 F. Supp. 111, 113 (D. Conn. 1992) (finding plaintiff to be a prevailing party after obtaining preliminary injunction where the preliminary injunction "represent[s] an unambiguous indication of probable success on the merits, and not merely a maintenance of the status quo"). In their submissions, the parties should address whether the fact that

the preliminary injunction was stipulated and not litigated affects the Court's analysis, in addition to whether Plaintiffs' subsequent amendments to their complaint and change in relief sought has any effect on their prevailing party status.

Likewise, additional briefing is necessary on the reasonableness of the fees sought by Plaintiffs.[6]  Here, Plaintiffs have seemingly sought recovery for all fees incurred in this case up to this point.  It does not appear that Plaintiffs have attempted to parse out only the portion of fees related to time entries for which they would conceivably be deemed a prevailing party but instead have included work for all time spent, including but not limited to time entries reflecting time spent responding to Defendants' motion to dismiss, drafting an amended complaint, and other matters which arguably go beyond Plaintiffs obtaining a preliminary injunction.   Similarly, while time spent preparing a fee application is potentially recoverable, *HomeAway.com, Inc. v. City of New York,* No. 18 CIV. 7742 (PAE), 2021 WL 791232 (S.D.N.Y. Mar. 1, 2021) ("The default rule, however is that '[p]revailing parties under Section 1988 are therefore entitled to recover a reasonable fee for preparing and defending a fee application.'" (quoting *Hines v. City of Albany*, 862 F.3d 215, 223 (2d Cir. 2017)), the parties should address if or how much those fees should be reduced by virtue of the fact that the motion for fees was untimely filed and some of the fees sought were incurred in connection with demonstrating excusable neglect for Plaintiffs' untimeliness.   Attention should also be given as to whether any time entries

---

[6]    The Court notes that the declaration submitted in support of Plaintiffs' fee application omits the amount of fees sought.  (*See* Dkt. 21-1 at ¶¶ 2, 36, 37).  Any renewed filing shall contain Plaintiffs' specific calculations of the fee amounts being requested.

reflect excessive or duplicative hours. *See Congregation Rabbinical Coll. of Tartikov, Inc. v. Vill. of Pomona*, No. 07-CV-6304 (KMK), 2021 WL 1222159, at *5-6 (S.D.N.Y. Mar. 31, 2021) (holding that fee awards should exclude "excessive, redundant or otherwise unnecessary hours," and "time spent pursuing a failed claim if it was unrelated to the plaintiff's successful claims in the sense that it was based on different facts and legal theories," and be adjusted "based on the results obtained" (quotations and citations omitted)).

For these reasons, the Court concludes that a determination as to whether Plaintiffs are entitled to an award of fees is premature on the instant record. Accordingly, Plaintiffs' application for attorneys' fees pursuant to § 1988 is denied without prejudice to renew. Any renewed application and briefing by Plaintiff must be filed by no later than September 30, 2022. Responses to the supplemental briefing shall be filed on or before October 14, 2022. Replies are due on or before October 21, 2022. Upon review of the papers, the Court will determine if oral argument is necessary and, if so, will inform the parties of the date and time. Otherwise, the matter will be deemed submitted and decided on the papers.

## CONCLUSION

For the foregoing reasons, Defendants' motion for permission to file a late responsive pleading is granted but their motion to dismiss is denied (Dkt. 19), Plaintiffs' motion to amend is granted (Dkt. 31), and Plaintiffs' motion for an extension of time to file their renewed application for attorneys' fees is granted but the application is denied without prejudice (Dkt. 21). Plaintiffs may file their second amended complaint within 14 days of the entry of this Decision and Order. Defendants shall answer the second amended

complaint consistent with Federal Rule of Civil Procedure 15(a)(3).   Any renewed

application for attorneys' fees and costs shall be filed as set forth in this Decision and

Order.

       SO ORDERED.

ELIZABETH A. WOLFORD
Chief Judge
United States District Court


DATED:     September 16, 2022
              Rochester, New York