UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

LIGHTHOUSE BAPTIST CHURCH, INC.,
RICHARD HACK, MATT MAYER,
PAUL GLISSON, JOHN EARLY,
BOB DEWITT, GARY PICKERING,
FRED COLONY, JEREMY NORTON,
and CHAD VIGIL,

                            Plaintiffs,

                       -against-

                                              Civil No. 6:20-CV-07000

CHEMUNG COUNTY, CHEMUNG COUNTY
HEALTH DEPARTMENT, CHRISTOPHER MOSS,
PETE BUZZETTI, and MARI DELANEY,

                            Defendants.
_____

**PLAINTIFFS' REPLY MEMORANDUM OF LAW
IN SUPPORT OF THEIR RENEWED FEE APPLICATION**

                                      **RUPP BAASE PFALZGRAF CUNNINGHAM, LLC**
                                      *Attorneys for Plaintiffs*
                                      R. Anthony Rupp III, Esq.
                                      Chad A. Davenport, Esq.
                                      1600 Liberty Building
                                      Buffalo, New York 14202
                                      rupp@ruppbaase.com
                                      davenport@ruppbaase.com
                                      (716) 854-3400

# TABLE OF CONTENTS

TABLE OF AUTHORITIES .................................................................................................. ii

PRELIMINARY STATEMENT ........................................................................................... 1

ARGUMENT ........................................................................................................................ 2

    POINT ONE ................................................................................................................... 2

    PLAINTIFFS ARE PREVAILING PARTIES. ............................................................ 2

        A. Plaintiffs achieved prevailing party status by obtaining the entirety of their injunctive relief sought through this Court's order of the Stipulated Preliminary Injunction ................. 3

        B. In granting the Stipulated Preliminary Injunction, this Court assessed the Plaintiffs' likelihood of success on the merits ....................................................................... 5

    POINT TWO ................................................................................................................. 6

    THE REQUESTED ATTORNEYS' FEES ARE REASONABLE ................................ 6

        A. The hourly rates are reasonable. ....................................................................... 7

        B. The number of hours expended are reasonable. .............................................. 8

        C. The time entries are sufficiently detailed .......................................................... 9

        D. Defendants' specific contentions are without merit. ....................................... 10

# **TABLE OF AUTHORITIES**

Cases

*Coalition for Basic Human Needs v. King*, 691 F.2d 597, 600 (1st Cir. 1982) .............................. 3

*Congregation Rabbinical Coll. of Tartikov, Inc. v. Vill. of Pomona*, No. 07-CV-6304 (KMK), 2021 U.S. Dist. LEXIS 62863, 2021 WL 1222159, at *16 (S.D.N.Y. 2021) ............................ 7

*Farrar v. Hobby*, 506 U.S. 103, 111-12 (1992) ................................................................................ 2

*Garcia v. Yonkers Sch. Dist.*, 561 F.3d 97 (2d Cir. 2009) ............................................................... 4

*Grant v. Martinez*, 973 F.2d 96, 99 (2d Cir. 1992) ......................................................................... 8

*Haley v. Pataki*, 901 F. Supp. 85, 89 (N.D.N.Y. 1995) ................................................................... 7

*Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983) ............................................................................ 2

*LaRouche v. Kezer*, 20 F.3d 68, 73 (2d Cir. 1994) ..................................................................... 3, 4

*LaRouche*, 20 F.3d ........................................................................................................................... 5

*Mastrio v. Sebelius*, 768 F.3d 116 (2d Cir. 2014) .......................................................................... 4

*Murray v. Coleman*, 232 F. Supp. 3d 311, 316 (W.D.N.Y. 2017) ................................................. 7

*Parish v. Kosinski*, Civil Action No. 5:17-CV-0344 (BKS/DEP), 2018 U.S. Dist. LEXIS 20134, at *12 (N.D.N.Y. 2018). .............................................................................................................. 8, 9

*Quaratino v. Tiffany & Co.*, 166 F.3d 422, 425 (2d Cir. 1999) ...................................................... 6

*R.G. ex rel M.G. v. Minisik Valley Cent. Sch. Dist.*, 531 F. App'x 76, 80 (2d Cir. 2013) .............. 5

Statutes

42 U.S.C. § 1988 .............................................................................................................................. 3

**PRELIMINARY STATEMENT**

This action is a result of Chemung County's *over*-enforcement of Covid restrictions, where defendants subjected Plaintiffs to additional restrictions far exceeding the "Interim Guidance for Religious & Funeral Services During the Covid-19 Public Health Emergency" ("Guidance"), which was promulgated by the New York State Department of Health on June 26, 2022. As a result of this imposition entirely outside of the Guidance, Defendants violated Plaintiffs' First Amendment rights by interfering with and prohibiting Plaintiffs from worshipping in accordance with their faith. Plaintiffs filed the present action to seek redress from this violation of their constitutional rights, namely, Defendants' imposition of restrictions plainly exceeding the bounds permitted by law.

On December 4, 2020, this Court ordered a Stipulated Preliminary Injunction ("Injunction") between the parties, which permitted Plaintiffs to worship and host in-person services and prohibited Defendants from further interfering with the exercise of Plaintiffs' First Amendment rights. In particular, the Stipulated Preliminary Injunction protected Plaintiffs from Defendants again imposing *additional* restrictions to the Guidance then in effect. *See* Dkt. 9, Stipulated Preliminary Injunction ("These requirements that defendants seek to impose are not contained in the [Guidance].").

The Stipulated Preliminary Injunction granted the very relief sought by Plaintiffs in filing suit against Defendants. *See* Dkt. 9 ("the parties have agreed to enter a stipulation that grants plaintiffs the relief they have requested"). The Stipulated Preliminary Injunction stayed in effect for the duration of the Covid-19 Public Health Emergency thereby protecting Plaintiffs for the entirety of the emergency period of the unprecedented Covid-19 pandemic. The Guidance is

no longer in effect nor presently enforced. As a result, Plaintiffs are no longer in danger of Defendants' misuse and improper enforcement of the Guidance in a way that would violate their First Amendment rights. Accordingly, Plaintiffs achieved prevailing party status by obtaining the entirety of the injunctive relief sought through this Court's order of the Injunction. As a prevailing party under 42 U.S.C. § 1988, Plaintiffs now respectfully request this Court award Plaintiffs attorneys' fees for the full time expended up to the granting of the Stipulated Preliminary Injunction,[1] including the drafting and defense of each fee application submitted to this Court.

## ARGUMENT

### POINT ONE
### PLAINTIFFS ARE PREVAILING PARTIES.

Plaintiffs are the prevailing party in the current action. "[A] plaintiff 'prevails' when actual relief on the merits of his claim *materially alters* the legal relationship between the parties *by modifying the defendant's behavior* in a way that *directly benefits the plaintiff*." *Farrar v. Hobby*, 506 U.S. 103, 111-12 (1992) (emphasis added). Achieving prevailing party status is a relatively low burden, where a party will be considered prevailing by succeeding "on *any significant issue* in litigation which achieves some of the benefit the parties sought in bringing suit." *See Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983) (internal quotations and citations omitted) (emphasis added). Thus, once the plaintiff crosses the "statutory threshold" into prevailing party status, the true inquiry turns on the degree of success achieved from which the court may determine an award of fees proportional to that success. *See id.* at 433, 440.

---

[1] Plaintiffs are seeking *only* attorneys' fees for time and effort expended *up to* the entry of the Injunction. This Court granted Plaintiffs' motion to amend their complaint, which included additional claims under state law as well as additional plaintiffs to the action. This fee application does not seek any fees associated with the newly added claims under the amended complaint nor does it seek any additional fees to adjust compensation alongside the addition of new plaintiffs.

**A. Plaintiffs achieved prevailing party status by obtaining the entirety of their injunctive relief sought through this Court's order of the Stipulated Preliminary Injunction.**

Contrary to defendant's claims, the Stipulated Preliminary Injunction was not merely a "return" to the status quo, but a material alteration between the parties. "The standard for preliminary injunctions . . . dictates a weighing of the likelihood of success on the merits, irreparable injury, the balance of equities and the public interest." *LaRouche v. Kezer*, 20 F.3d 68, 73 (2d Cir. 1994); (See Dkt. 40, Defendant's Brief, dated October 14, 2022 ("Def. Br."), p. 8). Meanwhile, the "standard for granting a TRO requires a finding of immediate and irreparable injury but not a specific determination as to the merits." *Id.* at 74. Maintaining the status quo, often in contexts where TROs have been granted,[2] does not establish prevailing party status—however, establishing "'a legal <u>entitlement</u>[3] to what he seeks'" *does* establish prevailing party status. *See id.* at 75 (quoting *Coalition for Basic Human Needs v. King*, 691 F.2d 597, 600 (1st Cir. 1982)).

Defendant's citation to *LaRouche* is unavailing, because in this case there is no uncertainty whether Plaintiffs prevailed as this Court assessed the merits of Plaintiffs' claims in granting the Injunction.[4] *See* Def. Br., p. 11. Plaintiffs brought this action, not to challenge the

---

[2] This difference between standards has resulted in courts examining whether a status quo has been maintained more often in cases where TROs have been granted. *See e.g.*, *LaRouche*, 20 F.3d at 75; *see also Garcia v. Yonkers Sch. Dist.*, 561 F.3d 97, 107 (2d Cir. 2009) ("The purpose of a temporary restraining order is to preserve an existing situation in *statu quo* until the court has an opportunity to pass upon the merits of the demand for a preliminary injunction.") (internal quotations and citations omitted).

[3] The Supreme Court has noted Congress's intent to permit an award of fees under the Civil Rights Attorney's Fees Awards Act to a party that "'has established his entitlement to some relief on the merits of his claims.'" *King*, 691 F.2d at 601 (quoting *Hanrahan v. Hampton*, 446 U.S. 754, 756-58 (1980)). This recognition by the Supreme Court has led other courts to understand that fees awarded under § 1988 are "meant to compensate civil rights attorneys who bring civil rights cases and win them. The need for such law suits, and such payment, may well be greatest in just those instances in which lawyers and officials, in totally good faith, have opposing views about what state and federal law requires of them." *See id.* at 602.

[4] "The *LaRouche* court does not necessarily require denial of attorneys' fees . . . . Rather, the *LaRouche* and *King* decisions require the Court to assess whether the plaintiffs have had any determination of their claims on the merits, before deciding whether to award attorneys' fees." *Haley v. Pataki*, 901 F. Supp. 85, 88 (N.D.N.Y. 1995).

3

Guidance nor the Governor's authority to promulgate such legislation, but to seek redress from Defendants' violation of Plaintiffs' constitutionally protected rights. In *LaRouche*, the Second Circuit held that "[i]f a plaintiff loses the appeal of its claims on the merits, an award of attorney's fees based on an injunction . . . is improper," while "[i]f a claim is mooted, interim injunctive relief may be a basis for an award of attorney's fees, if plaintiff has prevailed on the merits at the interim stage." 20 F.3d at 75.

Here, the latter part of *LaRouche*'s holding is applicable. Defendants had imposed additional restrictions on Plaintiffs in violation of their constitutional rights. The Stipulated Preliminary Injunction prohibited Defendants from continuing their unlawful behavior and remained in effect for the duration of the Covid-19 Public Health Emergency. With this public health emergency at an end and the Guidance no longer in effect, there is no risk of Defendants misusing the Guidance to violate Plaintiffs' rights. In this way, proceeding to a final judgment on the merits resulting in a permanent injunction would not further benefit plaintiffs. Plaintiffs achieved their sought-after relief in the form of the Stipulated Preliminary Injunction such that Plaintiffs are now entitled to attorney's fees.

Without the Stipulated Preliminary Injunction, there would not have been any protection from or guarantee that Defendants would not continue to interfere with the exercise of Plaintiffs' First Amendment rights. Therefore, the Stipulated Preliminary Injunction established Plaintiffs' legal entitlement to their relief sought. Defendants cite *Garcia v. Yonkers Sch. Dist.*, 561 F.3d 97 (2d Cir. 2009) and *Mastrio v. Sebelius*, 768 F.3d 116 (2d Cir. 2014) to suggest Plaintiffs did not achieve legal entitlement to their relief, but these cases fall short of supporting such a proposition. *See* Def. Br., p. 8.

In both cases, plaintiffs did not achieve legal entitlement because their respective relief was never formalized by a court order. In *Garcia*, where the district court had not validly issued a preliminary injunction, yet the defendant voluntarily performed the relief sought by plaintiffs, the Second Circuit reasoned this "voluntary change in behavior [could not] serve as the basis for conferring prevailing-party status to the [plaintiffs]." *See* 561 F.3d at 108. In *Mastrio*, there was no "formal, written, or binding settlement" that procured relief for plaintiffs, but an agreement between the parties memorialized in an "e-mail 'report.'" 768 F.3d at 118. In contrast, here, the Injunction was formalized by this Court's order. *See* Dkt. 9, Stipulated Preliminary Injunction. As a formalized Court order of relief, the Stipulated Preliminary Injunction establishes Plaintiffs' legal entitlement to their sought relief.

Plaintiffs entered into the Stipulated Preliminary Injunction in the interest of judicial economy and efficiency. Should this Court refrain from following precedent and decide that the Stipulated Preliminary Injunction does not demonstrate Plaintiffs' achievement of prevailing party status, such a decision will discourage future parties from seeking resolutions outside of full-fledged litigation out of concern that interim relief will fall short of providing plaintiffs with the full relief that may be better ascertained by pursuing litigation.

**B. In granting the Stipulated Preliminary Injunction, this Court assessed the Plaintiffs' likelihood of success on the merits.**

This Court granted the Stipulated Preliminary Injunction alongside an assessment of the Plaintiffs' likelihood of success on the merits. "To determine whether a court's action is governed by its assessment of the merits or represents a mere procedural maintenance of the status quo often requires close analysis of the decisional circumstances and reasoning underlying the grant of preliminary relief." *LaRouche*, 20 F.3d at 72. In *R.G. ex rel M.G. v. Minisik Valley Cent. Sch. Dist.*, 531 F. App'x 76, 80 (2d Cir. 2013), the Second Circuit granted a preliminary

injunction in light of a greater concern for the irreparable harm faced by the plaintiff. There, the Second Circuit explicitly noted that the "ultimate" merits of the case would need to be assessed at a later date from the granting of the injunction. *Id.* Unlike in *R.G. ex rel*, this Court properly assessed the merits of Plaintiffs' claims when granting the Stipulated Preliminary Injunction. *See id.*

In granting the Stipulated Preliminary Injunction, this Court reviewed numerous submissions by Plaintiffs and found "that the plaintiffs have shown that their First Amendment and Fourteenth Amendment claims are likely to prevail." *See* Dkt. 9. In fact, Defendants themselves agreed that Plaintiffs had shown the likelihood of success of their claims by signing the Stipulated Preliminary Injunction, and they should be estopped from claiming otherwise now. Further, this Court acknowledged "that plaintiffs, in obtaining this injunction, may be entitled to reasonable fees and costs under 42 U.S.C. § 1988 in an amount to be determined upon subsequent application to this Court." *See id.*

## POINT TWO
## THE REQUESTED ATTORNEYS' FEES ARE REASONABLE.

Plaintiffs have provided supporting documents to demonstrate the reasonableness of the fees requested. *See* 2022 Rupp Decl. Exs. A-D (Dkt. 22-1, 22-2, 22-3, 22-4). "The starting point for the determination of a reasonable fee is the calculation of the lodestar amount." *Quaratino v. Tiffany & Co.*, 166 F.3d 422, 425 (2d Cir. 1999). There is "a 'strong presumption' that the lodestar figure represents a reasonable fee." *Id.* (citations omitted). The lodestar amount is calculated by multiplying the number of hours reasonably expended by a reasonable hourly rate. *See LeBlanc-Sternberg v. Fletcher*, 143 F.3d 748,763-64 (2d Cir. 1998). At its discretion, a court may adjust this fee by excluding excessive, redundant, or otherwise unnecessary hours. *See Congregation Rabbinical Coll. of Tartikov, Inc. v. Vill. of Pomona*, No. 07-CV-6304

(KMK), 2021 U.S. Dist. LEXIS 62863, 2021 WL 1222159, at *16 (S.D.N.Y. 2021) (internal quotations and citations omitted). The fee may also be adjusted based on "'the results obtained.'"[5] *See id.* at *17 (quoting *Quaratino*, 166 F.3d at 425).

### A. The hourly rates are reasonable.

"[T]he appropriate hourly fee to be applied in calculating an award of attorneys' fees is the prevailing rate in the district in which the suit is litigated." *Haley v. Pataki*, 901 F. Supp. 85, 89 (N.D.N.Y. 1995). The rate should be "based on market rates in line with those [rates] prevailing in the community for similar services by lawyers of reasonably comparable skill, experience, and reputation." *Murray v. Coleman*, 232 F. Supp. 3d 311, 316 (W.D.N.Y. 2017) (internal quotations omitted).

The hourly rates of R. Anthony Rupp III, Esq., Chad Davenport, Esq. and others are reasonable according to the local rates for civil rights attorneys. *See Parish v. Kosinski*, Civil Action No. 5:17-CV-0344 (BKS/DEP), 2018 U.S. Dist. LEXIS 20134, at *12 (N.D.N.Y. 2018). citing (*Legends are Forever, Inc. v. Nike, Inc.*, 2013 U.S. Dist. LEXIS 164091, 2013 WL 6086461, at *3-4 (N.D.N.Y. 2013) (awarding attorney's fees based on an hourly rate of $350 for a partner and $275 for an associate); *Aquent, LLC v. Atl. Energy Servs.*, No. 1:09-CV-0524, 2012 U.S. Dist. LEXIS 40015, 2012 WL 1005082, at *3 (N.D.N.Y. 2012) (applying rates of $135 to $345 per hour for attorneys); *Trudeau v. Bockstein*, 05-CV-1019, 2008 U.S. Dist. LEXIS 61758, 2008 WL 3413903, at *5-6 (N.D.N.Y. 2008) (awarding attorneys' fees for local counsel with hourly rates of $345, $275, $250, and $190)). In *Murray*, the court reasoned that the hourly rates were reasonable by recognizing the attorney's experience in litigation and civil rights. 232 F.

---

[5] "Indeed, 'the degree of success obtained' is '[t]he most important factor in determining a reasonable fee for a prevailing plaintiff.'" *Congregation*, 2021 U.S. Dist. LEXIS 62863, at *17 (quoting *LeBlanc-Sternberg*, 143 F.3d at 762).

7

Supp. 3d at 317. Here, this Court should similarly take notice of counsel's experience with litigation and proficiency and knowledge of civil rights law. *See id.*

Diminishing the hourly rates of attorneys will result in similar cases not being taken by attorneys out of concern that the time and energy spent will not be compensated appropriately. If attorneys find such cases are economically infeasible, this will result in more violations of civil rights, such as those perpetuated here by Defendants, to go unchecked by the courts.[6]

**B. The number of hours expended are reasonable.**

When determining whether hours should be excluded, a court should base its inquiry not on "what effort appears necessary in hindsight, but rather on whether 'at the time the work was performed, a reasonable attorney would have engaged in similar time expenditures.'" *See id.* at \*17 (quoting *Grant v. Martinez*, 973 F.2d 96, 99 (2d Cir. 1992). A court should consider "whether the rates at which compensation is sought are those that a reasonable, paying client would be willing to pay." *Parish v. Kosinski*, Civil Action No. 5:17-CV-0344 (BKS/DEP), 2018 U.S. Dist. LEXIS 20134, at \*12 (N.D.N.Y. 2018).

The time spent on defending this fee application has increased proportionally to the opposition presented by Defendants. Defendants should not be permitted to prolong Plaintiffs' request only to argue that the fees accumulated under this prolonged time are unreasonable. By deciding to utilize a strategy that drags out the process in order to deprive Plaintiffs of reasonable fees, Defendants must accept the consequences—namely, that prolonging

---

[6] "[I]f an attorney is required to expend time litigating his fee claim, yet may not be compensated for that time, the attorney's effective rate for all the hours expended on the case will be correspondingly decreased. . . . Such a result would not comport with the purpose behind most statutory fee authorizations, viz, the encouragement of attorneys to represent indigent clients and to act as private attorneys general in vindicating congressional policies." *Reed v. A.W. Lawrence & Co.*, 95 F.3d 1170, 1184 (2d Cir. 1996) (citing *Gagne v. Maher*, 594 F.2d 336, 344 (2d Cir. 1979).

8

Plaintiffs' request has driven up their fees according to the time spent applying for and defending the fee application. *See Reed*, 95 F.3d at 1183-84 (2d Cir. 1996) (holding attorneys' fees for the preparation of a fee application are compensable to encourage attorneys "to act as private attorneys general in vindicating congressional policies.").

Additional time spent on research, drafting, and developing arguments became necessary when Defendants continually opposed Plaintiffs' reasonable request of this Court. This time is also a result of this Court's approval of a revised fee application and its request for further exposition and clarity. *See* Decision and Order, dated September 16, 2021 (Dkt. 35). Plaintiffs have, in good faith, expended time researching and responding to this Court's directives with the utmost efficiency and accuracy.[7]

**C. The time entries are sufficiently detailed.**

Time entries submitted by Plaintiffs, *see* 2022 Rupp Decl. Exs. A-D (Dkt. 22-1, 22-2, 22-3, 22-4) avoided vagueness where possible to provide sufficient detail on tasks performed in the pursuit of the Stipulated Preliminary Injunction. In *Parish*, the plaintiffs met their burden of proof by providing contemporaneous time records alongside their fee application that explained the number of hours spent by various professionals on the case. 2018 U.S. LEXIS 20134 at *19. Similarly, here, Plaintiffs have provided a thorough explanation of time entries for each attorney that worked on this case. *See id.*; *see* 2022 Rupp Decl. Exs. A-D (Dkt. 22-1, 22-2, 22-3, 22-4). Furthermore, both the Injunction and the effort expended by Plaintiffs up to the granting of the Injunction demonstrate the Plaintiffs' goals to conserve judicial time and optimize efficiency.

---

[7] In an exercise of billing discretion, Plaintiffs are not seeking compensation for the additional amounts expended in reply to this brief.

9

**D. Defendants' specific contentions are without merit.**

Defendant claims that we did not adequately explain the $1157 in other fees is attributable. See Def. Br., p 17 (Dkt. 40). In fact, that was attributable to the fees paid to Jodi Galvin, Esq., which has been documented before to this Court. *See* Dkt. 16-1, Declaration of R. Anthony Rupp III, dated March 19, 2021, and Exhibit L thereto (Dkt. 16-1 p. 45-46); *see also* Dkt. 21-1, Declaration of Chad Davenport, Esq., dated October 29, 2021, ¶39 and Exhibit F thereto (Dkt. 21-1 p. 40-41). Furthermore, to be clear, Plaintiffs are not seeking compensation within this motion for the Unrelated Fees contained in Exhibit C to the 2022 Rupp Decl. (Dkt. Document 37-4), but would reserve the right to seek those fees at another time. This calculation was included to make clear to the Court what had been removed in accordance with this Court's Decision and Order, dated September 16, 2021 (Dkt. 35).

## CONCLUSION

For the foregoing reasons, Plaintiffs' renewed motion for attorneys' fees should be granted, along with any and other relief that this Court considers just and proper.


Dated: October 21, 2022         **RUPP BAASE PFALZGRAF CUNNINGHAM LLC**
                                *Attorneys for Plaintiffs*


                                       *s/R. Anthony Rupp III*
                                       R. Anthony Rupp III, Esq.
                                       Chad A. Davenport, Esq.
                                1600 Liberty Building
                                Buffalo, New York 14202
                                rupp@ruppbaase.com
                                davenport@ruppbaase.com
                                (716) 854-3400